Opinion issued November 20, 2008









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00254-CR






KENNETH MAURICE BUSTOS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1083717






MEMORANDUM OPINION

Appellant, Kenneth Bustos, was charged with possession with intent to deliver
4 to 200 grams of cocaine. After his motion to suppress was denied, appellant
pleaded guilty to the charge and the trial court assessed punishment at eight years'
confinement. In a single point of error, appellant challenges the denial of his motion
to suppress. We affirm.

BACKGROUND

 On September 7, 2006, narcotics officer P. McIntyre was conducting
surveillance in a Houston area known for drug trafficking. McIntyre had information
from a citizen informant that a black male in his 20's, driving a champagne-colored
Buick, would be in the area, and that he possessed crack cocaine. While positioned
at a nearby intersection, McIntyre saw a vehicle and driver matching the informant's
description. Appellant was the driver.

 Appellant turned into a strip center without using his turn signal. Appellant
entered a liquor store to buy cigarettes. McIntyre then witnessed appellant make what
appeared to be two hand-to-hand drug sales before returning to his vehicle. McIntyre
contacted a nearby patrol unit to stop appellant for his traffic violation and for
suspicion of possible narcotics activity.

 Officers Smith and McPherson made the traffic stop and asked appellant for
identification. Appellant claimed he did not have a driver's license and gave a false
name to police, for which he was arrested. Before being placed in the police vehicle,
McPherson briefly searched appellant for weapons or other possibly dangerous
contraband. During the pat-down, appellant tightened his buttocks in a way that
caused McPherson, a six-year undercover narcotics veteran, to believe appellant was
hiding something between his buttocks.

 Another officer, Sergeant Wilson, arrived on the scene and took appellant into
the liquor store for a more thorough search. Wilson received permission from the
store owner to use a secluded back storage room for the search. Wilson shook
appellant's pants and underwear in an effort to dislodge any narcotics hidden in
Wilson's clothes or buttocks. After no narcotics were recovered through this method,
Wilson brought appellant outside to the other officers.

 Soon after, McPherson and McIntyre returned appellant to the storage room. 
The officers had received authorization from a supervisor to conduct a visual body-cavity search and were trained and experienced in the process. Wearing rubber
gloves, McPherson pulled appellant's pants and underwear to his knees and saw a
plastic bag protruding about an inch from between appellant's buttocks, but not
within his anal cavity. McPherson removed the bag, which contained crack rocks. 

 Appellant admitted hiding the drugs because he did not want police to find
them. He also claims that officers lied about the search procedure, and that they "dug
up" in his buttocks. The trial court denied appellant's motion to suppress. Appellant
later pleaded guilty to possession of a controlled substance with intent to deliver, and
this appeal followed.


MOTION TO SUPPRESS

In his single point of error, appellant contends that the evidence is factually
insufficient to support the trial court's denial of the motion to suppress. However, a
factual sufficiency review from the denial of a motion to suppress evidence is not
appropriate. See Hanks v. State, 137 S.W.3d 668, 671-72 (Tex. Crim. App. 2004)
(holding factual sufficiency review inappropriate as to admissibility of evidence). 
Instead, the standard for reviewing a trial court's ruling on a motion to suppress
evidence is bifurcated; we give almost total deference to a trial court's determination
of historical facts and review de novo the court's application of the law. Maxwell v.
State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). In reviewing a ruling on a
question of the application of law to facts, we review the evidence in the light most
favorable to the trial court's ruling. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). At a suppression hearing, the trial court is the sole and exclusive trier
of fact and judge of the witnesses' credibility. Maxwell, 73 S.W.3d at 281. 
Accordingly, the trial court may choose to believe or to disbelieve all or any part of
a witnesses' testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Warrantless Arrest Based on Probable Cause

Police may stop and later conduct a warrantless arrest if provided with probable
cause. See Henry v. United States, 361 U.S 98, 102 (1959). The standard necessary
to determine probable cause is less than that necessary to sustain a conviction.
Delgado v. State, 718 S.W.2d 718, 721 (Tex. Crim. App. 1986). We examine the
reasonableness of a warrantless arrest by analyzing whether the facts and
circumstances within the officer's knowledge, and of which he had reasonably
trustworthy information, were sufficient to warrant a prudent man in believing that
the suspect had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89,
91, 85 S. Ct. 223, 225 (1964); Britton v. State, 578 S.W.2d 685, 689 (Tex. Crim. App.
1979). 

The trial court found that the police officers had probable cause to believe that
(1) appellant had committed a traffic violation in their presence, and (2) appellant was
engaged in illegal drug trafficking. Officer McIntyre testified that, as he was
maintaining surveillance of appellant, he saw appellant turn into the parking lot of a
strip center without signaling a turn. Failure to signal a turn is a traffic violation. See
Tex. Transp. Code Ann. § 545.104(a) (Vernon 1999). Section 543.001 of the Texas
Transportation Code allows any peace officer to arrest without a warrant a person
found committing a traffic violation, except for speeding or a violation of the open
container law. Tex. Transp. Code Ann. §§ 543.001, .004(a)(1) (Vernon 1999). An
arrest for a minor traffic violation is not an unreasonable seizure under the Fourth
Amendment. Atwater v. City of Lago Vista, 532 U.S. 318, 340, 354, 121 S. Ct. 1536,
1550, 1557 (2001); State v. Gray, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005).

Additionally, the trial court found that the police officers had probable cause
to arrest appellant without a warrant because they had probable cause to believe that
appellant was engaged in narcotics trafficking. A citizen informant had told Officer
McIntyre that a black make, mid to late twenties, 6'1" to 6'2" tall, would be in the area
of Sherwood and Vollmer in a champagne-colored Buick, and would be in possession
of crack cocaine. McIntyre saw a vehicle matching the informant's description
traveling eastbound on Sherwood. As McIntyre watched, appellant, the driver of the
champagne-colored Buick, turned into a strip center without first signaling. McIntyre
confirmed that appellant matched the description given by the informant. McIntyre
saw appellant put his hand to his mouth and then exchange money while making a
hand-to-hand transaction with at least two people. Based on his experience and the
information received from the informant and corroborated by his own surveillance,
McIntyre believed that appellant was engaged in narcotics transactions. When
detained for the traffic violation, appellant gave officers a false name. Under these
circumstances, McIntyre had probable cause to believe that appellant was engaging
in illegal drug trafficking. See McGee v. State, 105 S.W.3d 609, 614 (Tex. Crim.
App. 2003) (holding that informant's tip, which was corroborated by police
surveillance, sufficient to provide probable cause for warrantless arrest).

Finally, as noted above, after being stopped by Smith and McPherson,
appellant provided the officers with a false name and was arrested. A person commits
an offense if he give a false or fictitious name to a peace officer who has lawfully
arrested or detained the person. See Tex. Penal Code § 38.02(b). 

Accordingly, the trial court did not abuse its discretion in concluding that
police officers had probable cause to arrest appellant without a warrant.

Search Incident to Arrest

After a lawful arrest, police are authorized to conduct a full but reasonable
search of the individual and areas within the individual's immediate control. Chimel
v. California, 395 U.S. 752, 762-63 (1969); see United States v. Robinson, 414 U.S.
218 (1973). A search incident to arrest may, in some circumstances, include a visual
body-cavity search. (1) McGee, 105 S.W.3d at 617-18.

In McGee, the Court of Criminal Appeals considered the propriety of a visual
body-cavity search performed incident to arrest. 105 S.W.3d at 616-17. In so doing,
the court considered (1) the scope of the intrusion, (2) the manner in which the search
was conducted, (3) the justification for the search, and (4) where the search was
conducted. Id. The court noted that the reasonableness of the search turns on the
particular facts and circumstances and that no one factor is determinative. Id. at 616.



1. The Scope of the Intrusion

We note, as the court did in McGee, that a visual body-cavity search is among
the most intrusive of searches and can be demeaning, dehumanizing, undignified,
humiliating, and terrifying. McGee, 105 S.W.3d at 616. Nevertheless, "[w]e must
still determine whether the legitimate interests of law enforcement outweigh the
intrusiveness of the search." Id.

2. Manner in which Search was Conducted

Under this factor, we consider (a) whether the search was violent and (b) 
whether the officer conducting the search had training and/or experience in
conducting such searches. Although appellant testified that McPherson "dug up" in
appellant's buttocks during the search, McPherson testified that he used a gloved
hand to pull out the plastic bag, which was protruding from appellant's buttocks by
about an inch. The trial court was entitled to believe McPherson and disbelieve
appellant. Maxwell, 73 S.W.3d at 281 (at suppression hearing, trial court is sole and
exclusive fact finder and judge of witness credibility). McPherson testified that he
did not penetrate appellant's anal cavity. Thus, the evidence shows that "[w]hile it
may have been an uncomfortable experience for [appellant,] that is not sufficient to
classify the search as violent." McGee, 105 S.W.3d at 116. McPherson also testified
that he had been trained and was experienced in the process of conducting such a
search.

We conclude that the manner in which the search was conducted was
reasonable, which weighs in favor of the conclusion that the search was reasonable.

3. Justification for the Search

Visual body-cavity searches may be based on suspicion short of probable
cause. McGee, 105 S.W.3d at 616-17 (citing Bell v. Wolfish, 441 U.S. 520, 559-60,
99 S. Ct. 1861 (1979)). However, as in McGee, we have already held that the officers
had probable cause to believe that appellant was engaged in illegal activity. See id.
at 617. "Probable cause is the highest level of justification employed by the courts." 
Id. Here, the officers had information from an informant that a person driving a
champagne-colored Buick, would be in a certain area, and would be carrying crack
cocaine. The officers located a champagne-colored Buick near the specified location
and noted that appellant matched the description given by the informant. As an
officer watched, appellant conducted what, in the officer's experience, appeared to
be several hand-to-hand drug transactions. Appellant was stopped and arrested after
he made an illegal turn and then gave the officers a false name. While an initial pat-down search was being conducted, appellant clenched his buttocks together. The
officers testified that, in his experience, drug dealers often hide their wares between
their buttocks. Thus, at the time the search was conducted, the police had probable
cause to believe that appellant was concealing drugs on his person.

Additionally, officers are allowed to search an individual after an arrest in
order to prevent the destruction of evidence and also to ensure safety. See Chimel,
395 U.S. at 763. The McGee court authorized a similar visual body-cavity search in
order to retrieve drugs hidden between a suspect's buttocks after he was arrested.
McGee, 105 S.W.3d at 617. During this trial, several officers testified that searches
are conducted in order to confirm that the suspect is not in possession of dangerous
material. Specifically, Officer McIntyre testified that he searched appellant to prevent
any evidence from being destroyed, and also because he wanted to minimize the
possibility of drugs being brought into the jail. According to McIntyre, suspects have
consumed hidden narcotics while in custody and have died as a result. McIntyre
testified he feared a suspect would ingesting hidden contraband and did not want
appellant harmed while in police custody.

We conclude that the officers had sufficient justification to conduct the search,
which weighs in favor of the conclusion that the search was reasonable.

4. Where the Search was Conducted

A search must be conducted in a hygienic environment where there is no risk
of infection. McGee, 115 S.W.3d at 617. Here, officers gained permission to search
appellant in the storage room of the strip center liquor store. The store owner, Ouyng
Nguyen, testified that the room was kept clean because it was used to store food
products. Also, McPherson testified that he used rubber gloves when conducting the
search. Given that there was no penetration of appellant's body, a more sterile
environment was not necessary. See Id.

The McGee court also noted that strip searches and body cavity searches
"should rarely, if ever, be conducted in public places." Id. In this case, the room used
for the search was in the back of the store, and could not be seen from the front
because two large coolers hid it from view. Appellant's privacy was ensured, as the
search was not seen by anyone but the police officers conducting the procedure. 

We conclude that the place of the search was appropriate and private, which
weighs in favor of the conclusion that the search was reasonable.

Having concluded that three of the four factors weigh in favor of the
conclusion that the search was reasonable, we also conclude that the trial court did
not err in denying appellant's motion to suppress. 








Accordingly, we overrule appellant's sole point of error.

CONCLUSION

 We affirm the trial court's judgment.




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Nuchia and Higley.


Do not publish. Tex. R. App. P. 47.2(b).
1. - ' 
 
 '
 
 
 
' " " -